# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **JEMCO ENTERPRISES LLC** | **CASE NO. 6:25-CV-00746** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **WILDCARDS PRODUCTION LLC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court are three identical Motions to Dismiss filed by individual Defendants, Matthew David Garth, J.C. Locas, and Jamie Ward. (Rec. Doc. 19; 20; 21). Plaintiff, JEMCO Enterprises, LLC, opposed the motions (Rec. Doc. 28). The motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Defendants' Motions to Dismiss be denied.

## Facts and Procedural History

JEMCO Enterprises, LLC filed this suit for permanent injunction and damages against Wildcards Production, LLC, and its members, Garth, Locas, and Ward, following a botched wrestling business deal. JEMCO, owned by former professional wrestler, Joey Comeaux, and his wife, alleges that in late 2023 or early

2024, Garth and Ward approached Comeaux about doing a documentary on his wrestling career. (Rec. Doc. 1, ¶8-12). JEMCO alleges that, at some point, Ward and Garth reinstated their inactive company, Wildcards Production, LLC, and that Locas also became involved. (¶17-18).

In the meantime, Garth, a graphic designer, in his individual capacity, created a logo for JEMCO's business, Louisiana Wrestling Association (LWA), which JEMCO registered as a trademark. (¶13-16; 19). Ward created a website. (¶22).

The documentary was presented to the public in January 2025. (¶23). Thereafter, JEMCO prepared for and put on a successful wrestling show in March 2025. Ward and Garth expressed interest in filming the wrestling shows, and Ward allegedly hired additional personnel for the March 2025 show at his own expense. (¶24-27). Although JEMCO and Defendants did not have a business agreement, Defendants continued to film JEMCO's wrestling shows. (¶29).

Following the successful March 2025 show, the Cajundome approached JEMCO to do a wrestling show for the Cajun Heartland State Fair. (¶30). In April 2025, the time leading up to the May 2025 Cajundome event, JEMCO and Defendants' relationship began to sour due to Locas's attempts to assert control over JEMCO's shows. (¶32-34). The parties disagreed about the Cajundome show and disputed the contents of the required contract. Ultimately, JEMCO signed the contract without Defendants' input. When Ward and Locas attempted to intervene

by contacting the Cajundome separately, JEMCO decided to move forward without Defendants' involvement. (¶35-42).

Thereafter, Defendants took down the LWA website which Ward had created and caused JEMCO's social media accounts to be taken down by claiming intellectual property infringement. (¶43-47). JEMCO alleges that Defendants have continued to disparage JEMCO through their own social media and maliciously interfered with JEMCO's business. (¶48-53). JEMCO seeks injunctive relief and asserts claims for intentional interference with business relations and for violations of Louisiana Unfair Trade Practices Act. Defendants, proceeding *pro se*, answered the suit. The individual defendants, Garth, Ward, and Locas, move to dismiss JEMCO's claims, stating that they cannot be personally liable for the acts of Wildcards Productions, LLC.

## Law and Analysis

Although federal jurisdiction arises under 28 U.S.C. §1331 due to JEMCO's copyright-related claims governed by the Lanham Act, the question of a limited liability company member's liability is a question of Louisiana state law, summarized as follows:

> "[A]s a general proposition, the law considers a [limited liability company] and the member(s) comprising the [limited liability company], as being wholly separate persons." *Ogea v. Merritt*, 2013–1085, p. 6 (La. 12/10/13), 130 So.3d 888, 894–95 (emphasis added) (citing La. Civ. Code art. 24). The liability of a limited liability

company's members and managers is governed by Louisiana Revised Statute § 12:1320, which provides:

> ... (B) Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.... (D) Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.
> La. Rev. Stat. § 12:1320.
>
> Thus, in general, members of a limited liability company are not liable for the debts, obligations, or liabilities of the limited liability company. La. Rev. Stat. § 12:1320(B). However, § 12:1320(D) is the exception to the general protection afforded to members of a limited liability company in instances of fraud, breach of a professional duty, or negligent or wrongful acts. La. Rev. Stat. § 12:1320(D); *Ogea*, 130 So.3d at 897.

*Leon v. Diversified Concrete, LLC*, 225 F. Supp. 3d 596, 601 (E.D. La. 2016).

JEMCO argues that its claims against individual Defendants are based on their individual negligent and wrongful acts. Interpreting "negligent" and "wrongful acts" as used as an exception to limited liability, the Louisiana Supreme Court has stated as follows:

> Because these concepts appear with great frequency outside of tort law, we find that the terms "negligent" act and "wrongful act" as employed in La. R.S. 12:1320(D) are not limited to "torts." We are, however, equally mindful that the terms "negligent" act and "wrongful act" are part of an exception in subsection (D) and that the general rule,

4

and hence the general goal, of the limited liability provision in subsection (B) is to afford limited liability. …

> [T]o accord the terms "negligent" act and "wrongful act" their commonly understood meaning while also respecting the general limitation of liability, we find the following four factors assist our inquiry: 1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.

*Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 900–01.

1. **<u>The Tort Factor</u>**

"[I]f a traditional tort has been committed against any cognizable victim(s), that situation weighs in favor of the 'negligent or wrongful act' exception and in favor of allowing the victim(s) to recover against the individual tortfeasor(s)." *Id.* at 901. "Because 'negligent' act and 'wrongful act' are common features of tort law, the tort factor may be dispositive." *Id.* at 905.

JEMCO alleges that the individual Defendants' personal conduct results in liability for intentional interference with business relations, a tort recognized by Louisiana jurisprudence:

> Louisiana courts have recognized a cause of action for tortious interference with business. In Louisiana, the delict is based on the principle that the right to influence others not to deal is not absolute. Louisiana law protects the businessman from malicious and wanton interference, permitting only interferences designed to protect a legitimate interest of the actor. The plaintiff in a tortious interference

5

> with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff. It is not enough to allege that a defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party…The plaintiff must show that the defendant acted with actual malice. Actual malice must be pleaded in the complaint.

*Henderson v. Bailey Bark Materials*, 47,946 (La. App. 2 Cir. 4/10/13), 116 So. 3d 30, 37 (citations omitted).

JEMCO alleges facts showing that the individual Defendants personally attempted to interfere with its Cajundome contract and thereafter attempted to sabotage JEMCO's use of the LWA logo and website. Considering factual allegations in JEMCO's favor, the Court finds the tort factor weighs in favor of member liability.

## 2. The Criminal Factor

"[I]f the conduct at issue constitutes a crime, that fact weighs in favor of the 'negligent or wrongful act' exception and in favor of allowing the victim(s) to recover against the offender. *Ogea*, 130 So. 3d at 902. "[O]nly those crimes for which a natural person, not a juridical person such as an LLC, could be held culpable, should be considered." *Id*. "[S]imilar to the tort inquiry, the pivotal question regarding a member's alleged criminal conduct is whether that conduct demonstrates the member breached a duty owed to the claimant." *Id*. at 903. JEMCO did not allege

any facts supporting criminal liability or argue for any such finding. The criminal factor is neutral.

### 3. The Contract Factor

"If the member's conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC, that situation weighs against holding the member personally liable for the conduct." *Ogea*, 130 So. 3d at 904. JEMCO specifically alleges the parties did not operate under a contract. (Rec. Doc. 1, ¶29). The contract factor weighs in favor of individual liability.

### 4. The Factor of Acting Inside or Outside the LLC

"[T]he distinction of acting 'outside' of the capacity as a member is a factor recognized in the jurisprudence and a distinction which, if present, weighs in favor of removing an individual from the protection of limited liability." *Id*. JEMCO's allegations show that the parties informally worked together to produce films of JEMCO's wrestling shows and, viewing the allegations in JEMCO's favor as the Court must at this stage, that the individual Defendants acted outside the LLC. This factor supports individual liability.

## Conclusion

Weighing JEMCO's allegations with the *Ogea* factors shows that JEMCO has stated claims for individual liability of the LLC's members. Accordingly, the Court

recommends that the individual Defendants' Motions to Dismiss (Rec. Doc. 19; 20; 21) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 6th day of November, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE